```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BAKERY AND CONFECTIONERY UNION AND
INDUSTRY INTERNATIONAL PENSION FUND
and BOARD OF TRUSTEES OF THE BAKERY AND
CONFECTIONERY UNION AND INDUSTRY
INTERNATIONAL PENSION FUND,
```

|  |  |
|---|---|
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| -against- | 21-cv-00294 (MKB)(AYS) |

M & A BAKING CORP.,

                              Defendants.
-----------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiffs, Bakery and Confectionery Union and Industry International Pension Fund ("Pension Fund") and its Board of Trustees ("Trustees") (collectively, "Plaintiffs"), commenced this action on January 19, 2021 against Defendant M & A Baking Corp. ("Defendant"), pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPAAA"), 29 U.S.C. §§ 1381 et seq., and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, for delinquent contributions that Defendant failed to pay under the parties' collective bargaining agreement ("CBA"). (See generally Compl., Docket Entry ("DE") [1]).

      Defendant failed to answer the Complaint or otherwise appear in this action. On April 6, 2021, Plaintiffs filed a request for a certificate of default with the Clerk of the Court, (DE [6]), which was granted on April 12, 2021. (DE [7].) On June 15, 2021, Plaintiffs filed the within motion for default judgment, which was referred to the undersigned by Judge Brodie on June 16, 2021, for a recommendation as to whether the motion should be granted and what, if any,

1

damages should be awarded. (DE [8]). For the following reasons, this Court respectfully recommends that Plaintiffs' motion be granted in its entirety.

## BACKGROUND

Plaintiff Pension Fund is a trust fund established and maintained pursuant to an Agreement and Declaration of Trust (the "Trust Agreement") to collect and receive contributions and provide retirement and related benefits to eligible employee participants. (Compl. ¶ 4.) At all relevant times, Defendant and the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 53 ("Local 53"), were parties to a series of CBA's. (Compl. ¶ 10.) Pursuant to the parties' CBA, Defendant agreed to be bound to the Trust Agreement and remit contributions to the Pension Fund for the purpose of providing pension benefits to all employees working in the bargaining unit that Local 53 represented. (Compl. ¶ 11.) The CBA required Defendant to make contributions to the Pension Fund for "each day or portion thereof, which an employee works in" a job classification covered by the CBA "or receives pay in lieu of work (such as holiday, vacation, pro rata vacation, and severance pay)." (Compl. ¶ 12.)

The Pension Fund's actuaries certified that the Fund was in "critical status," as defined in Section 305(b)(2) of ERISA, for the plan year 2012. (Compl. ¶ 13.) Due to this certification, all contributing employers were required under 19 U.S.C. § 1085(c)(7) to pay a statutory surcharge equal to five percent of their contractual contribution rates that took effect on June 1, 2012. (Id.) In November 2012, the Trustees adopted a "Rehabilitation Plan" that includes two schedules of contribution increases and benefit reductions, which are known respectively as the "Preferred Schedule" and the "Default Schedule." (Compl. ¶ 14.) The Preferred Schedule required five percent compounded annual contribution rate increases in addition to the statutory surcharge.

(Id.).  The Rehabilitation Plan remains in effect and Defendant and Local 53 adopted the Preferred Schedule on February 1, 2015.  (Id.)

In April 2018, an independent certified public accountant ("the auditor") retained by the Pension Fund performed a routine audit of Defendant's payroll records for the period of January 1, 2014 through December 31, 2016 for the purpose of determining whether Defendant had remitted to the Pension Fund all contributions required under the CBA for the years in question.  (Compl. ¶ 16.)  The auditor determined that Defendant failed to pay contributions in the amount of $368.19 from January 1, 2014 through December 31, 2016.  (Compl. ¶ 17.)

On May 7, 2018, the Pension Fund sent a copy of the audit report to Defendant and demanded payment of the deficiency.  (Compl. ¶ 18.)  Despite the Pension Fund's repeated demands for payment, Defendant has not paid any amount of the audit deficiency; nor has it paid contributions to the Pension Fund for the month of July 2018, which total $2,029.65.  (Compl. ¶ 19-20; Declaration of Steven D. Brock, dated June 14, 2021 ("Brock Decl."), DE [8-1], ¶ 13.)

Article V, Section 4 of the Trust Agreement requires the payment of interest by an employer that is in default in the payment of contributions for a period of more than ten (10) days, as well as attorney's fees and costs incurred in the enforcement of the employer's obligations.  (Compl. ¶ 21.)  As of May 31, 2021, Defendant owes interest on the delinquency found in the audit in the amount of $130.80, with interest continuing to accrue. (Brock Decl. ¶ 17 and Ex. F, annexed thereto.)

On or about July 31, 2018, Defendant effected a "complete withdrawal" from participation in the Pension Fund, within the meaning of ERISA.  (Compl. ¶ 23.)  As a result of this withdrawal, Defendant is obligated to pay withdrawal liability, as required by Section 4201(a) of ERISA.  (Compl. ¶ 24.)  The Pension Fund notified Defendant, by letter dated April

3

4, 2019, that it owed $599,604.00 in withdrawal liability and made a demand for payment. (Compl. ¶ 25.) The Pension Fund's notice further notified Defendant that it was required to satisfy its liability through monthly installment payments in the amount of $1,498.00, commencing on June 1, 2019, for 240 months. (Compl. ¶ 26.) Despite this notice and demand, Defendant has not paid the June 1, 2019 monthly installment or any subsequent installment payments. (Compl. ¶ 27.)

As set forth in the Complaint, for the period June 1, 2019 through January 1, 2021, Defendant owes the Pension Fund $29,960.00 in past due monthly withdrawal liability installment payments and $2,164.30 for interest due on these unpaid installments through January 31, 2021, with interest continuing to accrue. (Compl. ¶¶ 31-32.) As of May 31, 2021, the amount owed has risen to $35,952.00, which represents twenty-four missed installment payments at a rate of $1,498.00 per payment. (Brock Decl. ¶ 29.) Interest due and owing on the unpaid withdrawal liability amounts to $2,978.00 through May 31, 2021, with interest continuing to accrue. (Id. ¶ 31 and Ex. L, annexed thereto.)

Under the Rehabilitation Plan, if an employer completely withdraws from the Pension Fund fewer than five years from the effective date of the Preferred Schedule, the employer's account will retroactively be placed in the Default Schedule. (Compl. ¶ 35.) The employer will be obligated to pay all of the additional contributions, plus interest, that would have been required had the employer initially adopted the terms of the Default Schedule. (Id.) Under this provision of the Rehabilitation Plan, and as a result of Defendant's withdrawal from the Pension Fund, Defendant was retroactively subject to the Default Schedule of contributions as of February 1, 2015, when its Preferred Schedule had taken effect. (Compl. ¶ 36.) After calculating the difference between the contributions that Defendant remitted from February 1,

4

2015 to July 30, 2018 at the Preferred Schedule rates, and the contributions retroactively owed at the Default Schedule rates, Defendant owes a total of $12,408.14, which includes the amount of the audit delinquency and interest, and the unpaid July 2018 contributions. (Compl. ¶ 37.) In addition, Defendant owes $2,422.70 in interest as of May 31, 2021, with interest continuing to accrue to date. (Brock Decl. ¶ 25 and Ex. H, annexed thereto.)

In addition to interest, pursuant to Sections 502(g)(2) and 4301 of ERISA, Defendant is obligated to pay the greater of the amount of interest or liquidated damages under the plan in an amount not to exceed twenty percent of the unpaid contributions, as well as attorney's fees and costs. (Compl. ¶ 33.) Pursuant to Article V, Section 4 of the Trust Agreement, the Pension Fund adopted a resolution, dated June 23, 2017, providing that the "amount of liquidated damages to be awarded in judgments pursuant to Section 502(g)(2)(B) of ERISA shall be equal to the greater of a) the interest awarded pursuant to Section 502(g)(2)(B) of ERISA, or b) 20 percent of the unpaid contributions or withdrawal liability awarded on the judgment." (Compl. ¶ 34.) The Pension Fund has calculated liquidated damages at the rate of twenty percent of the unpaid withdrawal liability, which amount to $7,190.40. (Brock Decl. ¶ 34 and Ex. N, annexed thereto.)

In sum, the Pension Fund seeks the following damages: (1) delinquent contributions in the amount of $12,408.14; (2) unpaid withdrawal liability in the amount of $35,952.00; (3) interest, as of May 31, 2021, in the amount of $5,400.81, with interest continuing to accrue; and (4) liquidated damages in the amount of $7,190.40, for a total monetary award of $60,951.35, plus additional interest. The Pension Fund also seeks attorney's fees and costs in the amount of $8,682.00.

DISCUSSION

I.     Legal Standard

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process.  See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d. Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  See Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  See id.

Where a default occurs, the well-pleaded factual allegations set forth in the Complaint are deemed to be true.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied").  However, "[i]t is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court."  Allstate Ins. Co. v. Howell, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."  Ferrara v. Tire Shop Ctr., No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015).  Accordingly, the court must determine whether a plaintiff's allegations establish liability as a matter of law.  See City of New

6

York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

II.     Liability

Pursuant to Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; see also LaBarbera v. J.D. Collyer Equip. Corp., 337 F.3d 132, 134 (2d Cir. 2003). In addition, Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees . . . ." 29 U.S.C. § 185(a). Here, Article XIV and Schedule A of the CBA provide that Defendant "agrees to be bound as a party to all the terms and provisions of" the Trust Agreement and remit contributions to the Pension Fund for the purpose of providing pension benefits to all employees working in the bargaining unit that Local 53 represents. (Compl. ¶ 11.) Further, the CBA requires Defendant to make contributions to the Pension Fund for "each day or portion thereof, which an employee works in a job classification [covered by the CBA] or received pay in lieu of work (such as holiday, vacation, pro rata vacation, and severance pay)." (Compl. ¶ 12.)

Plaintiffs allege in the Complaint that, despite being informed of the outstanding withdrawal liability, as well as the delinquent contributions from January 2014 to December 2016, and for July 2018, due and owing, Defendant has failed to make any payments. (Compl. ¶¶ 17-20, 25-27.) Based on these allegations, as well as the Declaration of Steven D. Brock ("Brock"), the Manager of the Administrative Services of the Fund, which substantiates these

7

allegations, the Court concludes that there is a basis for liability for violations of ERISA and the LMRA based on Defendant's breach of the CBA and Trust Agreement. Accordingly, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted.

III.  Damages

Although a default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability, a plaintiff must still prove damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Credit Lyonnai Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Plaintiffs herein seek unpaid contributions, unpaid withdrawal liability, interest, and liquidated damages, as specified in ERISA, as well as attorney's fees and costs.

A.  Delinquent Contributions

Plaintiffs allege in the Complaint that Defendant failed to pay contributions in the amount of $368.19 from January 1, 2014 through December 31, 2016 and did not pay contributions for the month of July 2018 in the amount of $2,029.65, despite the Pension Fund's repeated demands for payment on May 7, 2018 and June 17, 2018. (Compl. ¶¶ 17-20.) Plaintiff further alleges that Defendant was retroactively subject to the Default Schedule of contributions pursuant to the Rehabilitation Plan as of February 1, 2015, the date the Preferred Schedule took effect, upon Defendant's complete withdrawal from the Pension Fund. (Compl. ¶ 36.) Plaintiff alleges that Defendant, consequently, owes a total of $12,408.14 in delinquent contributions found in the audit, contributions for the month of July 2018, and contributions under the Preferred Schedule. (Compl. ¶ 37.) Defendant has taken no action to challenge this assessment. Accordingly, this Court recommends that Plaintiffs be awarded $12,408.14 in damages representing Defendant's delinquent contributions.

B.  Unpaid Withdrawal Liability

Pursuant to Section 4201 of ERISA, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C. § 1381. As demonstrated by the allegations of the Complaint and the Declaration of Steven Brock, the Pension Fund calculated Defendant's withdrawal liability, in accordance with the provisions of ERISA, to be $35,952.00. Defendant has taken no action to challenge this assessment. Accordingly, this Court recommends that Plaintiffs be awarded $35,952.00 in damages representing Defendant's unpaid withdrawal liability.

C.  Interest

Section 502(g)(2)(B) of ERISA mandates an award of interest on unpaid contributions. See 29 U.S.C. § 1132(g)(2)(B). Pursuant to the Pension Fund's Delinquent Employer Contribution Collection Policies, the rate of interest on delinquent contributions is calculated as follows: 1/1/16-6/30/16: 3.0%; 7/1/16-6/30/17: 4.0%; 7/1/17-12/31/17: 6.0%; 1/1/18-6/30/18: 6.5%; 7/1/18-12/31/18: 7.0%; 1/1/19-6/30/20: 7.5%; 7/1/20-12/31/20: 6%; 1/1/21-6/30/21: 5.5%. (Brock Decl. ¶ 16 and Exs. D and E, annexed thereto.) Applying the foregoing interest rates, the Pension Fund calculated the interest due and owing on the unpaid contributions to be $2,422.70 as of May 31, 2021, with interest continuing to accrue at a rate of 5.5% per annum through the date of judgment herein. (Brock Decl., Ex. O.)

With respect to the interest owed on Defendant's unpaid withdrawal liability, pursuant to the regulations of the Pension Benefit Guaranty Corporation, interest is calculated on unpaid withdrawal liability at the following rates: 4/1/19-9/30/19: 5.5%; 10/1/19-12/31/19: 5.25%; 1/1/20-3/31/20: 4.75%; 4/1/20-6/30/20: 4.25%; 7/1/20-3/31/21: 3.25%. (Brock Decl. ¶ 30 and

9

Ex. K, annexed thereto.) As of May 31, 2021, the amount of interest on the unpaid withdrawal liability due and owing is $2,978.11, with interest continuing to accrue at a rate of 3.25% per annum through the date of judgment herein. (Brock Decl. ¶ 31 and Exs. L and O, annexed thereto.)

As of the date of this Report and Recommendation, the amount of interest due and owing on the delinquent contributions since May 31, 2021 is an additional $302.94 (162 days x $1.87/day). Accordingly, the total amount of interest due and owing on the delinquent contributions is $2,725.64. This Court respectfully recommends that Plaintiffs be awarded $2,725.64 in interest on the delinquent contributions through the date of this Report and Recommendation, as well as additional interest to be calculated at a rate of $1.87 per day through the date of judgment herein.

Similarly, as of the date of this Report and Recommendation, the amount of interest due and owing on the unpaid withdrawal liability since May 31, 2021 is an additional $518.40 (162 days x $3.20/day). Accordingly, the total amount of interest due and owing on unpaid withdrawal liability is $3,496.51. This Court respectfully recommends that Plaintiffs be awarded $3,496.51 in interest on the unpaid withdrawal liability through the date of this Report and Recommendation, as well as additional interest to be calculated at a rate of $3.20 per day through the date of judgment herein.

      D.    <u>Liquidated Damages</u>

Both the Trust Agreement and Section 502(g)(2)(C) of ERISA provide for an award of statutory liquidated damages equal to the greater of: (1) interest on unpaid contributions, or (2) liquidated damages, so long as such damages do not exceed twenty percent (20%) of the unpaid contributions. <u>See</u> 29 U.S.C. § 1132(g)(2)(C). As demonstrated by the

allegations of the Complaint and Brock's declaration, the Pension Fund calculated Defendant's liquidated damages, in accordance with the provisions of ERISA, to be $7,190.40. Defendant has taken no action to challenge this assessment. As Plaintiffs have demonstrated their right to recover liquidated damages, this Court respectfully recommends that liquidated damages be awarded in the amount of $7,190.40.

V. Attorney's Fees and Costs

Both the Trust Agreement and ERISA entitle Plaintiffs to recover reasonable attorney's fees and costs. Plaintiffs seek $8,177.50 in attorney's fees and $504.50 in costs.

A. Attorney's Fees

As a general matter when determining attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (emphasis in original). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill, 522 F.3d at 190-91 (holding that a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a

11

"reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney who worked on the action. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 559 U.S. at 552.

Here, Plaintiffs seek to recover $8,177.50 in attorney's fees and have submitted the Declaration of Patricia McConnell, dated June 15, 2021 ("McConnell Decl."), and contemporaneous billing records in support of their application. (McConnell Decl., (DE [8-2].) Plaintiffs seek reimbursement for services rendered by attorney Patricia McConnell, of counsel to Plaintiffs' law firm, as well as paralegal Amanda Potamitis, at hourly rates of $330.00 for Ms. McConnell and $100.00 for Ms. Potamitis. (McConnell Decl. ¶ 5 and Ex. A, annexed thereto.) The time spent on this action by counsel and its staff totals 21.75 hours. (McConnell Decl. ¶ 12, Ex. A.)

Plaintiffs' submission adequately sets forth the background and experience of the attorney and paralegal who billed time on this action. Moreover, as stated above, Plaintiffs' application is supported by contemporaneous time records that detail the tasks the attorney and paralegal performed in connection with this action, as well as the time expended on each task. (McConnell Decl., Ex. A.) Having reviewed the documents submitted, this Court finds both the number of hours expended and the hourly rates to be reasonable. See Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2013 WL 1760134, at *4 (E.D.N.Y. Apr. 24, 2013) ("In the Eastern District of New York, depending on the nature of the action, extent of legal services provided and experience of the attorney, hourly rates range from approximately $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates.") (collecting cases). Accordingly, the Court respectfully recommends that Plaintiffs be awarded $8,177.50 in attorney's fees.

B.  Costs and Disbursements

Plaintiffs also seek a total of $504.50 in costs and disbursements in connection with the instant action. (McConnell Decl. ¶ 13.) These costs are comprised of: (1) $402.00 for the court filing fee; and (2) $102.50 for process server fees. (McConnell Decl. ¶ 13, Ex. B.)

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)). The costs for which Plaintiffs seek to recover are those ordinarily

13

associated with litigation and this Court finds them to be reasonable. Accordingly, the Court respectfully recommends that Plaintiffs be awarded $504.50 in costs and disbursements.

## RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for default judgment, appearing at Docket Entry [8] herein, be granted, and that Plaintiffs be awarded the following: (1) $12,408.14 in delinquent contributions; (2) $35,952.00 in unpaid withdrawal liability; (3) interest on the delinquent contributions, through the date of this Report and Recommendation, in the amount of $2,725.64, with additional interest to be calculated at a rate of $1.87 per day through the date of judgment herein; (4) interest on the unpaid withdrawal liability, through the date of this Report and Recommendation, in the amount of $3,496.51, with additional interest to be calculated at a rate of $3.20 per day through the date of judgment herein; (5) $7,190.40 in liquidated damages; (6) attorney's fees in the amount of $8,177.50; and, (7) $504.50 in costs.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiffs. Further, the Court is directing Plaintiffs to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant at its last known address(es) and to file proof of service on ECF by November 12, 2021. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review

of this report and recommendation either by the District Court of Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED:**

Dated: Central Islip, New York
      November 10, 2021                           /s/     Anne. Y. Shields
                                                                 ANNE Y. SHIELDS
                                                                 United States Magistrate Judge